USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-5-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: BANK OF AMERICA CORP.
SECURITIES, DERIVATIVE, AND
EMPLOYEE RETIREMENT INCOME            Master File No. 09 MD 2058 (PKC)
SECURITY ACT (ERISA) LITIGATION
-----------------------------------------------------------x
THIS DOCUMENT RELATES TO:

KERS & CO., et al.,

       Plaintiffs,     10 Civ. 2284 (PKC)

   -against-

             MEMORANDUM AND ORDER

BANK OF AMERICA CORP., et al.,

       Defendants.
-----------------------------------------------------------x
P. KEVIN CASTEL, District Judge:

   Plaintiff KERS & Co. ("KERS") held 304,968 shares of Bank of America Corp. ("BofA") as of October 10, 2008. Approximately 11 months after the date set by the Court for putative class members to request exclusion from the Consolidated Securities Class Action, KERS moves for a ruling that it did, in fact, timely opt out of the class, or, alternatively, for the Court to find that there has been excusable neglect on the part of KERS within the meaning of Rule 6(b)(1)(B), Fed. R. Civ. P. (09 MD 2058, Docket # 864.)

   For reasons explained, the motion is denied.

I.  The Record Does Not Support KERS's Assertion that It Timely Submitted an Opt-Out Request.

   In February 2012, this Court granted the Lead Plaintiffs' motion for class certification, and thereafter directed that notice be sent to prospective class members that any opt-out requests must be "postmarked by no later than May 7, 2012." (Docket # 539-1 ¶¶ 18(a), 20.) The notice further stated that "a request for exclusion shall not be effective unless it

contains all the information called for by this paragraph and is postmarked by the date stated above, or is otherwise accepted by the Court." (Docket # 539-1 ¶ 20.) There is no dispute that KERS received notice and was aware of the opt-out procedure.

Garden City Group, which is the claims administrator in this case, has no record of receiving an opt-out request from KERS. A list of opt-out plaintiffs has been repeatedly filed with this Court and published elsewhere. On May 29, 2012, Lead Plaintiffs filed an affidavit from Garden City Group that listed all persons and entities who filed timely opt-out requests, as well as 18 late requests. (Docket # 573 ¶ 5.) KERS was not included. (Docket # 573-1.) On November 30, 2012, Lead Plaintiffs filed a notice of motion for preliminary approval of settlement of the Consolidated Securities Class Action, and attached a list of all shareholders who requested exclusion from the class. (Docket # 767.) KERS was not included in the list. (Docket # 767-1.) In a notice mailed on or about December 24, 2012, Lead Plaintiffs and Garden City Group mailed to 3,131,514 potential class members documentation relating to the proposed settlement of the Consolidated Securities Class Action, and directed recipients to a website, www.boasecuritieslitigation.com, with the published list of opt-out plaintiffs. (Docket # 829-7 ¶ 108 & n.1.) Garden City Group has maintained that publicly available website throughout much of this litigation. (Id. ¶ 9.)

KERS was directly informed that Garden City Group had no record of receiving its opt-out request. On June 11, 2012, counsel to BofA wrote a letter addressed to attorneys at Susman Godfrey L.L.P. ("Susman") and the law firm Grant & Eisenhofer P.A. (Susman Aff't Ex. B.) Under the heading "Exclusion Requests," the letter noted that BofA counsel had reviewed exclusion requests as of May 15, 2012. (Id. at 3.) The letter stated that there was no

record of KERS (among others) submitting an exclusion request, and stated: "Please confirm whether such exclusion requests exist, and if so, please forward them to my attention." (Id.)

Although it has now abandoned this position, from June 2012 through April 2013, KERS's counsel maintained that it had mailed an opt-out request for KERS on May 4, 2012. On June 26, 2012, a Susman attorney, Alexander L. Kaplan, sent an e-mail to BofA counsel responding to the June 11 letter. (Arfa Dec. Ex. B.) Kaplan stated that the "[e]xclusion requests were sent in, pursuant to the class action notice, for KERS & Co. . . . . Copies of the requests are attached here." (Arfa Dec. Ex. B.) Kaplan attached a PDF file containing a KERS opt-out request and a certified mail receipt with the date May 4, 2012 handwritten at the bottom. (Arfa Dec. Ex. B.) The receipt's handwritten notation stated: "5/4/12 BOA HSUS OPT OUT 01117D." (Arfa Dec. Ex. B.) There is no assertion that, after sending this e-mail, Kaplan or any other KERS attorney further attempted to clarify the situation with Garden City Group or BofA.

On January 7, 2013, prior to a mediation session that included BofA and KERS, an attorney for BofA e-mailed Kaplan. (Arfa Dec. ¶ 4 & Ex. C.) The e-mail stated in part that "I also don't want to leave the false impression that we view all these parties equally for mediation and settlement purposes – e.g., some did not submit exclusion requests . . . . I just don't want any misunderstandings." (Arfa Dec. Ex. C.) There is no assertion that Kaplan or any other KERS attorney further inquired as to any party's purported failure to submit exclusion requests.

Then, in April 2013, as parties to the Consolidated Securities Class Action were assembling papers related to the entry of final judgment, KERS's attorneys began to pay attention to the problem. According to Harry Susman, lead counsel contacted Kaplan during the week of April 1, 2013. (Susman Aff't ¶ 10.) Lead counsel stated that they were working on the form of final judgment in the Consolidated Securities Class Action, including a list of all opt-out

3

plaintiffs.  (Id.)  Lead counsel told Kaplan that KERS was not included in the opt-out list because Garden City Group had no record of receiving an exclusion request from KERS.  (Id.)  Harry Susman states: "This was the first time that KERS learned there was an issue regarding the timeliness of its exclusion request."  (Id.)[1]  KERS's counsel then contacted BofA to discuss the matter.  (Id.)

Meredith Arfa, an attorney for BofA, states in a declaration that on April 1, 2013, she spoke to Kaplan.  (Arfa Dec. ¶ 5.)  During that call, Kaplan told Arfa that Susman sent multiple exclusion requests to Garden City Group in a single envelope, "which he stated was why the PDF he had emailed on June 26, 2012 contained fewer certified return receipts than exclusion requests."  (Arfa Dec. ¶ 5.)  According to Arfa, during the call, Kaplan e-mailed a PDF that "he verbally represented contained KERS's exclusion request and the corresponding certified return receipt."  (Arfa Dec. ¶ 5 & Ex. D.)  The receipt is identical to the May 4 receipt that Kaplan previously forwarded to BofA counsel on June 26, 2012.  (Arfa Dec. Exs. B, D.)

On April 3, 2013, Kaplan e-mailed lead counsel and BofA counsel, explaining that he previously sent a certified mail return receipt of May 4, 2012, along with a packet of opt-out requests that included one for KERS.  (Arfa Dec. Ex. E.)  Kaplan's e-mail offered to provide an affidavit from McCrary as to the contents of the mailing.  (Arfa Dec. Ex. E.)  The e-mail again attached a PDF of the certified mail receipt with the handwritten May 4, 2012 notation. (Arfa Dec. Ex. E.)  It also attached opt-out requests from KERS and other entities.  (Arfa Dec. Ex. E.)

KERS has now abandoned its past representations that it mailed the opt-out request on May 4, 2012.  In the present motion, KERS now asserts that it actually mailed the opt-

---

[1] While, subjectively, this may have been the first moment of realization for Mr. Susman, in view of the incontrovertible record of written notices, including the June 11, 2012 letter, court filings and a webpage posting, it was not the first notice to KERS.

out request on May 7, 2012 – the postmark deadline for all opt-out requests.  Kaplan states in an affidavit that he "previously represented to [BofA] that the KERS exclusion request was sent on May 4, 2012, because that is what Mrs. McCrary's records indicated and what she relayed to me."  (Kaplan Reply Aff't ¶ 5.)  According to Kaplan, when the issue resurfaced last April, "we then investigated what exactly transpired."  (Kaplan Reply Aff't ¶ 5.)  "At that I [sic] point, we pulled the original correspondence between the client and my partner, Harry P. Susman, and realized that Mr. Susman had not received the request from KERS until May 7, which made it clear that the exclusion request could not have been sent on May 4, as I previously had informed the Bank based on Ms. McCrary's records."  (Kaplan Reply Aff't ¶ 5.)

The contemporaneous record submitted by KERS shows as follows: At 2:13 p.m. on May 7, 2012, KERS e-mailed attorney Harry Susman a copy of its executed request for exclusion from the class, and stated that it would send him the original via U.S. mail that same day.  (Susman Aff't ¶ 2 & Ex. A.)  Harry Susman forwarded that e-mail to Jill McCrary, his secretary, at 2:14 p.m. on May 7, with the instruction, "Keep in file."  (Susman Aff't Ex. A.)  In an affidavit, Ms. McCrary states that she was responsible for collecting and sending to Garden City Group all client exclusion requests.  (McCrary Aff't ¶ 2.)  Her affidavit states in part:

> On May 7, 2012, I received a copy of the exclusion request signed by KERS & Co.  I included it in a set of exclusion requests that I mailed on May 7, 2012 to the Garden City Group.  As with the prior mailing, I kept a copy of the set of requests in a file, and then attached the return receipt once I received it.

(McCrary Aff't ¶ 4.)  The McCrary Affidavit attaches "a true and correct copy of the set of exclusion requests and the return receipt for the May 7, 2012 mailing." (McCrary Aff't Ex. B.)  According to the affidavit, the May 7 mailing included opt-out requests for the Jerry E. Finger

5

1976 Children's Trust; the Jerry E. Finger Family Trust; Peggy E. Jalenak; Leo R. Jalenak, Jr.; Jalenak Holdings Partnership; the 1976 Real Estate Trust; and KERS.  (McCrary Aff't Ex. B.)

But in opposition to the motion, BofA has submitted evidence showing that this is demonstrably false.  The Declaration of Stephen J. Cirami, senior vice president for operations at Garden City Group, sets forth evidence that contradicts the McCrary Affidavit in nearly all material respects.  According to Garden City Group records, the opt-out requests for the 1976 Real Estate Trust and the Jerry E. Finger Family Trust were received on May 7, 2012, in a first-class mail envelope with the return address of Susman's office in Houston.  (Cirami Dec. ¶ 20 & Exs. A, D.)  The envelope is postmarked May 4, 2012.  (Cirami Dec. Exs. A, D.)  Garden City Group received opt-out requests from Peggy Jalenak, Leo Jalenak and Jalenak Holdings Partnership on May 8, 2012.  (Cirami Dec. ¶ 21 & Exs. G, H, I.)  The Jalenak requests were received in an envelope bearing a return-address stamp from Memphis, Tennessee.  (Cirami Dec. Exs. G, H.)  On May 10, 2012, Garden City Group received the opt-out request from the Jerry E. Finger 1976 Children's Trust, contained in a first-class mail envelope with the return address of Susman's office in Houston.  (Cirami Dec. ¶ 23 & Ex. M.)  The envelope is postmarked May 7, 2012.  (Cirami Dec. Ex. M.)  Thus, the only opt-out request cited by KERS that actually was contained in the May 7 envelope, according to non-party Garden City Group, was the request on behalf of the Jerry E. Finger 1976 Children's Trust.

As noted, Garden City Group has no record of receiving an opt-out request from KERS.  (Cirami Dec. ¶¶ 15-19.)  Cirami explains that Garden City Group searched its database for all documents potentially relating to KERS or Susman, reviewed every potentially matching record, reviewed all records received from Susman and "checked its stored hard copies of <u>every</u>

exclusion request it received in the Class Action.  GCG found no record or indication that it ever received an exclusion request from KERS."  (Cirami Dec. ¶ 19; emphasis in original.)

Faced with this evidence, KERS and its attorneys have offered nothing further. KERS has not sought an evidentiary hearing.  In its reply memo, "KERS acknowledges there is a factual question about whether the exclusion request was deposited in the mail on May 7, 2012." (Reply Mem. at 2.)  It also states that "[b]ased on the records from Garden City Group, it appears that Mrs. McCrary's records contain errors in addition to filing the KERS's [sic] request in the May 4 file, including by having certain requests in the file that were sent directly by the client." (Reply Mem. at 9.)  Susman has established that KERS e-mailed an opt-out request to Harry Susman, who, one minute later, on the final day to postmark opt-out requests, directed his assistant to "[k]eep in file."  (Susman Aff't Ex. A.)  There is no additional evidence of any instruction from Harry Susman to McCrary concerning the mailing of the KERS opt-out request. The McCrary Affidavit makes no mention of any such oral or written instruction.  Harry Susman makes no representation that he provided additional instructions to McCrary.  His affidavit states: "Upon receiving the KERS exclusion request, I forwarded the email and the attached request to my assistant, Jill McCrary.  Ms. McCrary subsequently informed me that she had mailed all the remaining exclusion requests from our clients, including the request from KERS, on May 7, 2012." (Susman Aff't ¶ 4.)  The only evidence, then, of any instruction concerning the KERS opt-out request is a directive from an attorney to his assistant to "[k]eep in file." (Susman Aff't Ex. A.)  Such an instruction is different from and inconsistent with an instruction to submit the request to the claims administrator.  KERS, however, elects to place ultimate blame on this assistant: "Admittedly, it appears the assistant's records about which requests were mailed when are confused."  (Reply Mem. at 5; see also Reply Mem. at 7, 8, 9.)

In <u>In re WorldCom, Inc. Securities Litigation</u>, 2005 WL 1048073, at *4 (S.D.N.Y. May 5, 2005), Judge Cote observed as follows:

> Rule 23 gives a court the power to prescribe the procedures a class member must follow to opt out of a class action. If there is a dispute about whether a class member has followed the appropriate opt-out procedures, the sparse case law on the issue suggests, and the practicalities of class action administration require, that the burden be on the class member to establish that he or she made a sufficient effort to communicate an intent to opt out through the appropriate channels. The class member must show that notice was effectively and timely communicated.

The intent to opt out and the expectation that an attorney will file required forms are insufficient. <u>Id.</u> "Without a requirement of documentary corroboration of a class member's efforts to opt out scores of individual credibility determinations may be necessary." <u>Id.</u> at *5; <u>see also</u> <u>Gortat v. Capala Bros., Inc.</u> 2011 WL 6945186, at *11-12 (E.D.N.Y. Dec. 30, 2011) (purported opt-out plaintiffs satisfied burden by submitting extensive record of requests to opt out of class prior to court deadline). "[F]lexibility" is appropriate in determining whether the opt-out request was actually received. <u>In re WorldCom</u>, 2005 WL 1048073, at *4.

While the submission of its postal receipt is relevant evidence that Susman forwarded an exclusion request on behalf of someone to Garden City Group, <u>see id.</u> at *4, its probative value to KERS is limited by the numerous contradictions in this record, and the absence of other evidence that the KERS request was timely submitted. Throughout, KERS's attorneys have made representations that are inconsistent with the records of the Garden City Group, and it appears that counsel did not inspect the firm's own files until April 2013, when they "then investigated what exactly transpired." (Kaplan Reply Aff't ¶ 5.) Based on the foregoing, KERS has not satisfied its burden of coming forward with evidence establishing that

it communicated an intent to opt out of the class. See In re WorldCom, 2005 WL 1048073, at *4.[2]

## II. KERS and Susman Have Not Come Forward with Evidence that a Failure to Submit a Timely Opt-Out Request Is the Product of Excusable Neglect.

KERS argues that, in the event the Court does not conclude that it timely submitted a request to opt out of the class, the failure to miss this deadline should be treated as an instance of excusable neglect under Rule 6(b)(1)(B), which states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect."

The determination of whether a party's failure to meet a deadline is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395 (1993). Factors include prejudice to the opposing party, the length of delay, its impact on judicial proceedings, the reason for the delay, whether the delay was within the movant's "reasonable control," and whether the movant acted in good faith. Id.

The Second Circuit has "'taken a hard line' in applying the Pioneer test." In re Enron Corp., 419 F.3d 115, 122 (2d Cir. 2005); cf. In re WorldCom, Inc., 708 F.3d 327, 337-38 (2d Cir. 2013) (explaining "hard line" scrutiny of excusable neglect in missing appellate deadlines). It has observed that the reason for delay is the most critical consideration, and "that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule . . . ." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (quotation marks and alteration omitted). This is true even if all other factors tip in the movant's favor. Id. at 366-67.

---

[2] KERS argues that even if the record does not support the assertion that it timely submitted an opt-out request, the Court should consider the request effective because the class notice permits a plaintiff to opt out if the request is "postmarked by the dated stated above, or is otherwise accepted by the Court." (Reply Mem. at 2.) On this record, however, KERS has not persuaded the Court that it should exercise its discretion to accept this request as timely.

When a movant's failure to meet a clear deadline was within his control, the motion will be denied, even in instances of good-faith ignorance of a rule, or when an ambiguous rule functioned as "a 'trap' for the unsuspecting litigant" and has since been amended. Id. Silivanch concluded that a district court abused its discretion when it found excusable neglect due to counsel's reliance on another attorney's mistaken representation of a deadline. Id. at 370. Even a movant's failure to meet an opt-out deadline due to hospitalization does not establish excusable neglect, when the movant waited an additional nine months before attempting to opt out of the class. In re Painewebber L.P.s Litig., 147 F.3d 132 (2d Cir. 1998); see also In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 129-30 (2d Cir. 2011) (excusable neglect not established when movant lacking formal education did not comply with clear terms of notice and relied on the advice of an adversary).

The Supreme Court has also emphasized that a court must consider whether the neglect of clients "and their counsel was excusable," and that clients are to "be held accountable for the acts and omission of their chosen counsel." Pioneer, 507 U.S. at 396-97 (emphasis in original). Similarly, "[t]he Second Circuit Court of Appeals and other courts have strictly limited what attorney error could be considered excusable neglect." In re Johns-Manville Corp., 2006 WL 1676392, at *2 (S.D.N.Y. June 14, 2006) (collecting cases) (Koeltl, J.). Preoccupied and "overworked" staff does not establish excusable neglect, and neither does inadvertence. In re Enron, 419 F.3d at 126.

KERS asserts that it "obviously acted in good faith and in reasonable reliance on its Counsel." (Mem. in Support at 6.) It notes that it obtained no strategic benefits from failing to opt out prior to deadline, and that after the opt-out deadline expired, it has continued to function as an opt-out plaintiff, subjecting itself to the cost and inconvenience of pursuing its

10

claim.  (Id.)  It states that no other parties have suffered prejudice due to its failure to file the opt-out request.  (Id. at 7; Reply Mem. at 3-4.)  According to KERS, "the fact that [BofA] let the matter drop" after previously alerting KERS of its failure to opt out "lulled KERS into believing there was no issue."  (Mem. in Support at 8.)

But, as previously discussed, KERS and Susman were repeatedly informed that Garden City Group had no record of KERS's opt-out request.  Notice was provided in court filings of May 29, 2012 and November 30, 2012.  KERS was not among the opt-out plaintiffs listed in a notice to class members sent on or about December 24, 2012.  Counsel to BofA expressly alerted Susman's attorneys to KERS's failure to opt out in a letter dated June 11, 2012.  Throughout, KERS did not appear on a website that included a published list of opt-out plaintiffs.  Hence, while Susman states that the failure to meet the deadline reflects "purely an apparent mistake by an administrative assistant," and states that "KERS did not delay at all <u>once it actually learned of the problem</u>," (Reply Mem. at 5; emphasis in original) in truth, the record shows approximately 10 months of attorney inactivity after first learning of the problem.  Counsel has expressly stated that they "investigated what exactly transpired" only in April 2013 – at which point, its representations continued to conflict with Garden City Group records.  (Kaplan Reply Aff't ¶ 5.)  And while KERS's attorneys claim that they were "lulled" into inactivity by opposing counsel, KERS's consistent omission from published lists of opt-out plaintiffs did not prod its attorneys into action.  Having timely alerted KERS of its failure to opt out of the class, it was not the responsibility of BofA, Garden City Group or any other party or entity to prod or remind its counsel.  Instead, KERS waited approximately 10 months after first receiving notice of this potential problem before filing this motion.

KERS maintains that no prejudice will occur if its neglect is excused, but BofA counters that, based on KERS's claim to have held 304,968 BofA shares during the class period and anticipated per-share damages from the class action settlement, BofA could be exposed to more than $1.4 million in damages if KERS succeeds on its claim.  As observed by In re Worldcom:

> There is considerable prejudice to the Citigroup Defendants, who paid an historic sum to settle the WorldCom class action litigation, if the deadline for the opt-out period is not enforced.  [Movant] had months to opt out and did not bring this application for months after the close of the opt-out period.

2005 WL 1048073, at *6; see also In re Enron, 419 F.3d at 131 ("while a claim of $12.5 million might seem insignificant in the face of a $900 billion bankruptcy, courts have previously upheld findings of prejudice in cases in which the late-filed claim was a small fraction of the total claims.").  Moreover, "[i]t is undisputed that pursuing an individual action or arbitration does not constitute notice of an election to opt out of a class action."  Id. at *3 (collecting cases); accord In re Prudential Sec. Inc. L.P. Litig., 164 F.R.D. 362, 370 (S.D.N.Y. 1996) (Pollack, J.).  "[W]ithout a firm opt-out date, litigants could wait to see if the class action resulted in a more favorable than anticipated resolution before choosing whether to continue with their own litigation."  In re WorldCom, 2005 WL 1048073, at *3.

Susman and KERS have not established excusable neglect.  Susman primarily blames an administrative assistant's purported filing mishaps, even though its attorneys apparently showed minimal interest in taking corrective action or even following up on numerous red flags.  Susman places additional blame on opposing parties for not more diligently pressing Susman on its failure to file the opt-out request.  KERS and Susman have not come forward with any meaningful explanation for the lengthy delay in acting, which was entirely

within their control – as was the failure to meet the original deadline. As noted, the Second Circuit has stated that the reason for the missing he neglected deadline is the most important factor in considering excusable neglect, and "that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule . . . ." Silvanich, 333 F.3d at 366; see also In re Painewebber, 147 F.3d at 135-36 (movant's hospitalization does not establish excusable neglect for subsequent nine-month delay in remedy failure to meet opt-out deadline).

For the foregoing reasons, KERS has not established excusable neglect for its failure to timely seek exclusion from the class.

CONCLUSION

KERS's motion is DENIED. (Docket # 864.) The Clerk is directed to terminate the motion.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 5, 2013

13